UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FOODSERVICEWAREHOUSE.COM, LLC | * | **CIVIL ACTION** |
| | * | **NO. 18-8836 "A"** |
| DEBTOR | * | |
| | * | Bankruptcy No. 16-11179 |
| | * | |
| RONALD J. HOF, IN HIS CAPACITY AS CHAPTER | * 7 | |
| TRUSTEE OF THE BANKRUPTCY ESTATE OF | * | |
| FOODSERVICEWAREHOUSE.COM, LLC, | * | |
| | * | |
| PLAINTIFF | * | |
| | * | |
| VERSUS | * | |
| | * | |
| PRIDE CENTRIC RESOURCES, INC. | * | |
| (FORMERLY PRIDE MARKETING AND | * | |
| PROCUREMENT, INC.) | * | |
| | * | |
| DEFENDANT | * | |
| | * | |

## <u>ORDER AND REASONS</u>

This matter comes before the Court on appeal from the United States Bankruptcy

Court for the Eastern District of Louisiana. Ronald J. Hof, in his capacity as Chapter 7

Trustee of the Bankruptcy Estate of FoodServiceWarehouse.Com, LLC appeals the August

30, 2018 judgment of the bankruptcy court, which granted in part and denied in part his

request for injunctive relief against Pride Centric Resources, Inc., a creditor. Pride Centric

Resources, Inc. has filed a cross-appeal on the judgment.

The parties have filed their respective briefs: Appellant's Original Brief (Rec. Doc.

10), Appellee/Cross-Appellant's Brief (Rec. Doc. 15), Appellee/Cross-Appellant's

Supplemental Brief (Rec. Doc. 20), and Appellant's Reply Brief (Rec. Doc. 23). The case

was submitted on February 20, 2019, (Rec. Doc. 25), and is before the Court on the briefs

without oral argument.[1] Having considered the briefs, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the judgment of the bankruptcy judge should be affirmed in part and reversed in part.

I. **Factual Background**

Pride Centric Resources, Inc. (hereinafter "Pride") is a buying collective of food service and food retail equipment dealers. It is a dealer-owned cooperative, which means that each dealer is both a member of the buying group and a shareholder of Pride. Pride also contracts directly with vendors, and negotiates discount pricing for its stockholders. Under this arrangement, Pride aggregates the orders of its stockholders when making purchases directly from a vendor, which allows it to take advantage of contractual discounts and to earn rebates. These rebates are owned by Pride but are periodically distributed to stockholders as a benefit. Most Pride dealers are "brick and mortar" based businesses only.

In 2006, a group of Pride members formed a separate company, FoodServiceWarehouse.com, LLC (hereinafter "FSW" or "the Debtor"), to compete in the internet market for restaurant equipment. Most of Pride's shareholders were also unit holders in FSW. FSW and Pride shared many key officers, directors, and personnel. FSW and Pride each engaged LaPorte, a Professional Accounting Corporation, to be its external independent auditor of financial statements.[2]

Prior to its bankruptcy filing, FSW exhibited reasonable growth and profitability and was poised to be successful and competitive in the restaurant wholesaling industry. To finance its operations, FSW had a line of credit with Iberia Bank. As of September 9, 2014,

---

[1] The Trustee has filed a request for oral argument. (Rec. Doc. 11). The briefing in this case has been extensive. The Court is not persuaded that oral argument is necessary or would contribute to the Court's resolution of the issues on appeal.

[2] The chief financial officer for both Pride and FSW was a former LaPorte CPA.

FSW's loan balance on its Iberia Bank line of credit was $8.7 million. Pride, at Iberia Bank's insistence, provided a $5 million guaranty to secure the line of credit.

On September 12, 2014, LaPorte delivered an unqualified or "clean" audit opinion to FSW for the calendar year ending December 31, 2013 ("the 2013 FSW Audit"). FSW's Board then began to explore making an initial public offering. As part of those efforts, FSW embarked on a course of rapid expansion designed to achieve that goal. To fund this expansion, FSW relied primarily on its Iberia Bank line of credit. FSW obtained an increase in its line of credit to $20 million but Iberia Bank required Pride to increase its guaranty to $10 million. In April 2015, Iberia Bank increased FSW's line of credit to $21 million. There was no increase at this time of Pride's guaranty.

On September 14, 2015, LaPorte delivered to Pride its independent audit of Pride's financial statements for the years ending December 31, 2014 and 2013 ("the 2014 Pride Audit").

On October 13, 2015, LaPorte delivered to FSW another unqualified audit of FSW's financial statements for the year ending December 31, 2014 ("the 2014 FSW Audit").

When Iberia Bank ultimately refused to further increase FSW's line of credit, FSW began to look to other lenders to fund its expansion.[3] In conjunction with an audit conducted by another potential lender, other third party professionals advised FSW that the audit opinions that LaPorte had issued to FSW were inaccurate in several material and consequential respects. Similarly, Pride also learned that its audits contained numerous and substantial deficiencies. In the meantime, Pride had already agreed to increase its guaranty

---

[3] During the time of FSW's expansion, Pride also financed the entity by providing operating funds. Whether this source of funding, which included rebates that Pride owned and vendor guarantees, constituted "loans" or "gifts" from Pride to FSW obtained via proper channels or ill-gotten funds poached by rogue officers and directors, is not an issue before the Court.

of FSW's Iberia Bank line of credit to $15 million. It is Pride's contention that it relied to its detriment on both the 2014 FSW Audit and on its own 2014 Pride Audit when its board agreed to the $5 million increase in the Iberia Bank guaranty.

According to Pride, two months after its board increased the Iberia Bank guaranty, FSW informed Pride that FSW had incurred losses expected to be in the range of $10 to $15 million. When FSW informed Iberia Bank of its losses, Iberia Bank promptly accelerated payment of the outstanding loan balance and swept Pride's bank accounts in partial satisfaction of the Iberia Bank guaranty.

On May 20, 2016, FSW filed for Chapter 11 bankruptcy protection, which was converted to a Chapter 7 proceeding on October 12, 2016. Ronald J. Hof was appointed as FSW's Chapter 7 Trustee. FSW's schedules and its books and records show that FSW incurred, during its period of expansion, well over $50 million in debt in less than a two year period. This debt includes the funding that FSW received from Pride and payments made by Pride as guarantor. Pride filed a proof of claim in FSW's Chapter 7 proceeding in the unsecured amount of $34 million.

Both Pride and FSW claim to have been damaged by their respective LaPorte audits, and Pride contends that it was also injured by the 2014 FSW Audit. Generally speaking, FSW claims that it relied upon the 2013 FSW Audit and the 2014 FSW Audit when it embarked upon its rapid expansion plan and incurred the crushing debt that left the company insolvent. Meanwhile, Pride contends that because of the deficiencies in the 2014 Pride Audit, it did not know of the reality of its own financial situation before it committed itself to significant financial transactions that it otherwise would have avoided. Among those transactions was the $5 million guaranty increase in favor of Iberia Bank, which Pride contends resulted from its reliance on both its own audit as well as the 2014 FSW Audit.

According to Pride, it was only after FSW declared bankruptcy that Pride realized the full extent of what LaPorte had failed to include in the audits. Pride instituted a malpractice proceeding against LaPorte by filing its Application for Accountant Review Panel with the CPA Society (hereinafter "Pride's CPA Panel Complaint").[4] Pride's claims against LaPorte can be summarized into two broad categories: (1) Pride's contractual and negligence claims against LaPorte derived from Pride's reliance on the information provided by LaPorte to Pride as Pride's auditor in the 2014 Pride Audit, and (2) Pride's negligence claims against LaPorte derived from Pride's reliance on the 2014 FSW Audit related to the Iberia Bank guaranty.[5]

On May 17, 2018, the Trustee filed a similar complaint on behalf of FSW against LaPorte with the CPA Society (hereinafter "FSW's CPA Panel Complaint") for professional negligence in connection with the alleged deficiencies in the 2013 FSW Audit and the 2014 FSW Audit. Pride's CPA Panel Complaint and FSW's CPA Panel Complaint remain pending with the CPA Society and it is the Court's understanding that they have been stayed pending the outcome of proceeding in this court. It is undisputed that the total of LaPorte's errors and omissions policies is insufficient to cover the damages claimed by either the Trustee (on behalf of FSW's estate) or Pride.

## II.      Proceedings in the Bankruptcy Court

In January 2018, the Trustee initiated an adversary proceeding against Pride by filing a complaint for declaratory and injunctive relief in the bankruptcy court, seeking to

---

[4] In Louisiana, all claims against certified public accountants or their firms, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a public accountant review panel established under state law. La. R.S. § 37:102.
       Pride's CPA Panel Complaint also names the individual LaPorte employees who prepared the audit reports. For simplicity, the Court refers simply to "LaPorte."

[5] Pride is not pursuing any claims for reliance on the 2013 FSW Audit.

enjoin Pride's CPA Panel Complaint. In his complaint (hereinafter "the Trustee's EDLA Complaint"), the Trustee sought a declaratory judgment that Pride's CPA Panel Complaint against LaPorte exercises control over property of FSW's bankruptcy estate, and therefore violates the automatic stay provisions of 11 U.S.C. § 362(a). The Trustee further alleged that to the extent that any independent causes of action exist those should be stayed pursuant to 11 U.S.C. § 105(a) because they are of questionable merit and threaten the bankruptcy estate's recovery. The overarching contention in the Trustee's EDLA Complaint is that all damages incurred by Pride are derivative of damage sustained by FSW.

During January, February, and April of 2018 the bankruptcy court held extensive proceedings related to the Trustee's EDLA Complaint. In conjunction with those proceedings, Pride was instructed to prepare a detail of damages allegedly sustained after September 15, 2015 (the date following Pride's receipt of the 2014 Pride Audit). The total of the damages that Pride contended were caused by deficiencies in the La Porte audits was $18,321,000.35, over half of the amount submitted in Pride's proof of claim. At the hearing held on June 13, 2018, the bankruptcy court repeatedly declined the Trustee's invitation to delve into the merits of Pride's CPA Panel Complaint against LaPorte, clarifying for the parties that the sole goal was to ensure that Pride was not pursuing claims that belonged to FSW—in other words, claims that were in actuality property of the bankruptcy estate.

On August 30, 2018, the bankruptcy court issued its ruling and final judgment on the Trustee's EDLA Complaint. At the outset, the bankruptcy court concluded that Louisiana law, specifically La. R.S. § 37:91, provides Pride with a cause of action against LaPorte for reliance on both the 2014 Pride Audit and the 2014 FSW Audit. The bankruptcy court was also persuaded that the allegations in Pride's CPA Panel Complaint stated a cause of action against LaPorte under that statute. The bankruptcy court then proceeded to determine

which, if any, of the claims asserted in Pride's CPA Panel Complaint were merely derivative of damage sustained by FSW, and therefore property of the estate for which only the Trustee could pursue LaPorte.

As to Pride's claims grounded on reliance on the 2014 FSW Audit, in other words claims brought pursuant to La. R.S. § 37:91(B)(2), the court concluded that the only element of its claim that Pride had demonstrated was its own and not derivative of harm to FSW was Pride's claim that it had increased the Iberia Bank guaranty by an additional $5 million. That claim was not property of the bankruptcy estate.

As to Pride's claims grounded on the 2014 Pride Audit, in other words claims brought pursuant to La. R.S. § 37:91(B)(1), the court concluded that the only elements of damage that Pride had demonstrated were its own and not derivative of harm to FSW was Pride's claims pertaining to Saturn, rebates, and vendor guarantees. The bankruptcy court was persuaded that these claims were based on the 2014 Pride Audit, not on the 2014 FSW Audit. Therefore, they were not property of FSW's bankruptcy estate. The bankruptcy court was persuaded, nonetheless, that Pride's claims for loans to FSW, payroll, licensing, marketing, and operating costs—elements of damages that Pride contended it sustained as a result of its reliance on the 2014 Pride Audit—appeared to be "an attempt to shoehorn additional losses into a claim against LaPorte under [§] 37:91(B)(1)."

Therefore, the following Pride CPA Panel Complaint claims, being property of the estate, were subject to the automatic stay of 11 U.S.C. § 362(a)(3): all claims allegedly based on the 2014 FSW Audit, with the exception of the Iberia Bank guaranty claim; and Pride's claim against LaPorte for loans to FSW, payroll, licensing, marketing, and operating costs, regardless of which audit Pride claimed reliance upon.

As to those portions of Pride's CPA Panel Complaint claims not enjoined pursuant to

11 U.S.C. § 362(a)(3), in other words claims that were not property of the estate,[6] the bankruptcy court refused to enjoin those claims pursuant to 11 U.S.C. § 105(a). The bankruptcy court concluded that bankruptcy jurisdiction did not extend to these claims as they were neither claims against the debtor, FSW, nor its property. The bankruptcy court explained that the right of a party to pursue its own cause of action could not be abridged by a bankruptcy court with no interest or jurisdiction over the claim simply because it may compete with the Trustee for recovery out of the same limited pool of funds.

III.     **The Appeals**

The Trustee's overarching contention on appeal is that every claim asserted in Pride's CPA Panel Complaint should have been stayed if not pursuant to the automatic stay provided by 11 U.S.C. § 362(a)(3) when property of the estate is involved, then at least pursuant to 11 U.S.C. § 105(a), which arguably gives the bankruptcy court discretion to stay a creditor's claims against a third-party. The Trustee argues on appeal that all claims based on the 2014 FSW Audit are property of the estate, and the claims that Pride artfully alleges were based on its own audits were actually "disguised FSW Audit based claims," again constituting property of the estate.

To the extent that any of Pride's claims are not property of the estate, the Trustee appeals the bankruptcy court's legal conclusion that it lacked subject matter jurisdiction and statutory authority to stay the claims pursuant to 11 U.S.C. § 105(a).

Finally, the Trustee argues that the bankruptcy court erred in failing to find that Pride failed to plead any actionable claims of professional negligence against LaPorte relative to any of the audits at issue.

Pride, on the other hand, contends that the bankruptcy court erred when it enjoined

---

[6] The bankruptcy court referred to these claims as "Pride Direct Claims."

any part of Pride's claims, whether based on the 2014 FSW Audit or on its own audit (the 2014 Pride Audit), because the bankruptcy court necessarily engaged in prejudging the merits of Pride's claims as part of its analysis. Pride argues that the bankruptcy court's approach, which was to enjoin certain categories of damages based on whether they appeared to be causally related to a particular audit, was contrary to the controlling authority in this circuit and therefore error.

This Court has jurisdiction over the appeal of the bankruptcy court's final judgment pursuant to 28 U.S.C. § 158(a). The bankruptcy court's conclusions of law are reviewed de novo; findings of fact are reviewed for clear error; mixed questions of fact and law are reviewed de novo. *In re Seven Seas Petrol., Inc.*, 522 F.3d 575, 583 (5th Cir. 2008) (citing *Century Indem. Co. v. Nat'l Gypsum Co. Settle. Trust*, 208 F.3d 498, 504 (5th Cir. 2000)).

## IV.    Discussion

### a. Governing Law

The filing of a bankruptcy petition creates an estate that is comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." *Seven Seas Petrol.*, 522 F.3d at 584 (quoting 11 U.S.C. § 541(a)(1)). Section 362(a) of Title 11 provides that the filing of a bankruptcy petition operates as an automatic stay applicable to any act to obtain property that belongs to the estate or to exercise control over property of the estate. *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1273 (5th Cir. 1983) (quoting 11 U.S.C. § 362(a)(3)). The phrase "all legal or equitable interests of the debtor in property" includes "rights of action" such as claims based on state law. *Seven Seas Petrol.,* 522 F.3d at 584. (citing *MortgageAmerica*, 714 F.2d at 1274; *In re Educ. Grp. Health Trust*, 25 F.3d 1281, 1283 (5th Cir. 1994)).

Whether the bankruptcy estate or a creditor can pursue a state law claim against a

third party—and concomitantly whether the automatic stay provided by § 362(a) applies to the claim—is a recurring issue in bankruptcy law. *In re Buccaneer Res.*, LLC, 912 F.3d 291, 293 (5ᵗʰ Cir. 2019) (citing *Seven Seas Petrol.*, 522 F.3d at 575). If a claim belongs to the estate, then the bankruptcy trustee has exclusive standing to assert it. *Seven Seas Petrol.*, 522 F.3d at 584 (citing *Educ. Grp. Health Trust*, 25 F.3d at 1283). However, the trustee has no right to bring claims that belong solely to the estate's creditors. *Id.* (citing *Caplin v. Marine Mid. Grace Trust Co.*, 406 U.S. 416 (1972)).

The question whether a particular state-law claim belongs to the bankruptcy estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case. *Seven Seas Petrol.*, 522 F.3d at 584 (citing *Educ. Grp. Health Trust*, 25 F.3d at 1284; *MortgageAmerica*, 714 F.2d at 1275-77). As part of this inquiry, the court looks to the nature of the injury for which relief is sought and considers the relationship between the debtor and the injury. *Id.; In re E.F. Hutton Sw. Props. II, Ltd.*, 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989). The court must focus on whether the creditor has suffered a direct injury or one that is derivative of an injury to the debtor. *Buccaneer Res.*, LLC, 912 F.3d at 293 (citing *Seven Seas Petrol.*, 522 F.3d at 584). "If a cause of action alleges only indirect harm to a creditor (*i.e.,* an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate. *Seven Seas Petrol.*, 522 F.3d at 584 (quoting *Educ. Grp. Health Trust*, 25 F.3d at 1284). "Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate." *Id.*

Importantly, standing under state law to "assert" or "bring" a claim, does not

necessarily mean that the claim "belongs" to that party. *MortgageAmerica*, 714 F.2d at 1276 n.9. It is for this reason that a creditor seeking to pursue a claim on its own behalf must show that it has suffered a direct injury as opposed to one that comes about derivatively, *i.e.*, only because of harm inflicted on the debtor.[7] *Buccaneer Res.*, 912 F.3d at 293.

Two crucial points have emerged from the controlling jurisprudence in this area. First, it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct. *Buccaneer Res.*, 912 F.3d at 295; *Seven Seas Petrol.*, 522 F.3d at 585 (citing *In re Zale Corp.*, 62 F.3d 746, 753 (5th Cir. 1995). Therefore, the existence of common parties and shared facts between the debtor's bankruptcy and the creditor's cause of action does not necessarily mean that the claims asserted by the creditor are property of the estate. *Seven Seas Petrol.*, 522 F.3d at 585.

Second, the issue of whether the creditor's claims will ultimately prove to be legally or factually valid does not factor into the analysis of whether the claim belongs to the estate or to the creditor. *Seven Seas Petrol.*, 522 F.3d at 585. At the pleading stage allegations are just that and they must be taken on their face. *Id.; Educ. Grp. Health Trust*, 25 F.3d at 1285 (applying the appropriate legal standard to the facial allegations of the complaint). When evaluating at the pleading stage whether a claim is property of the estate or of the creditor, the court does not consider whether the creditor's allegations are sufficient to state a cause of action under the state law upon which it relies, or to speculate as to what set of facts might ultimately be proven in support of recovery.[8] *Id.* at 587. The fact that the creditor

---

[7] Instead of using the direct/derivative terminology, some courts speak in terms of whether a creditor's injury is "personal" (direct) or "general" (derivative). *Buccaneer Res.*, 912 F.3d at 294 n.1) (citing *Lumpkin v. Envirodyne Indus., Inc.,* 933 F.2d 449, 463 (7th Cir. 1991)).
[8] In fact, in *Seven Seas Petroleum*, the Fifth Circuit expressly acknowledged that it was difficult to

ultimately may be unable to prevail on the claim does not render the claim property of the estate. *Id.* at 587-88. That the defendant may have a valid and meritorious defense on the merits goes to the resolution of the claim and does not determine what is or what is not property of the bankruptcy estate. *See Educ. Grp. Health Trust*, 25 F.3d at 1286.

### b. Analysis

Pride's (and the Debtor's) claims against LaPorte arise under La. R.S. § 37:91, entitled Privity of Contract, which states in relevant part:

> No action based on negligence may be brought against any defendant licensee, or any employee or principal of a defendant licensee, unless the plaintiff claims to have been injured as a result of their justifiable reliance upon financial statements or other information examined, compiled, reviewed, certified, audited, prepared pursuant to a preparation of financial statement engagement, or otherwise prepared, reported, or opined on by the defendant licensee or in the course of the defendant licensee's engagement to provide other services and at least one of the following conditions apply:

> (1) The plaintiff is the issuer or successor of the issuer of the financial statements or other information examined, compiled, reviewed, certified, audited, prepared pursuant to a preparation of financial statement engagement, or otherwise prepared, reported, or opined on by the defendant licensee, and such plaintiff has engaged the defendant licensee to examine, compile, review, certify, audit, prepare pursuant to a preparation of financial statement engagement, or otherwise report or render an opinion on such financial statements or to provide other services.

> (2) The defendant licensee was aware at the time the engagement was undertaken that the financial statements or other information were to be made available for use in connection with a specified transaction by the plaintiff who was specifically identified to the defendant licensee, was aware that the plaintiff intended to rely upon such financial statements or other information in connection with the specified transaction, and had direct contact and communication with the plaintiff and expressed by words and conduct the defendant licensee's understanding of the reliance on such financial statements or other information.

---

even discern the precise theory of recovery that that creditor was advancing against the defendant yet the legal plausibility of the claim did not alter the analysis. 522 F.3d at 585.

La. Rev. Stat. Ann. § 37:91(B)(1), (2) (West Supp. 2019).

The importance of this statute to the dispute at hand cannot be gainsaid because the *Seven Seas Petroleum* analysis, the outcome of which determines whether a particular state law claim belongs to the bankruptcy estate, begins with the question whether under applicable state law the Debtor (FSW) could have raised the claim at issue as of the commencement of the case. In other words, we begin by looking at standing under state law. If the Debtor (FSW) could not have raised the claim at issue as of the commencement of the case, in other words if the Debtor lacks standing under state law, then the claim is not property of the estate and it remains unaffected by the automatic stay.

Pride engaged LaPorte to audit its financial statements. LaPorte issued the 2014 Pride Audit to Pride. Pride's contention is that the 2014 Pride Audit was deficient in numerous ways, and that these deficiencies injured or harmed Pride because Pride relied on the audit when deciding whether to provide advances to FSW and to guarantee its financial obligations. Pride also contends that certain benefits were conferred on FSW outside the normal approval channels (rebates, and vendor guarantees) and that these irregularities were not identified and reported to Pride even though LaPorte was both contractually and ethically required to do so. These negligence and breach of contract claims are assertible by Pride under La. R.S. § 37:91(B)(1), which is the portion of the statute that deals with parties who are in contractual privity with the defendant accountant firm.

As far as the 2014 Pride Audit is concerned, the Debtor had no contractual privity with LaPorte. Under the plain language of § 37:91(B)(1), the claim belongs to Pride alone

and the Debtor has no standing to assert it.[9] Because the Debtor has no standing to assert the § 37:91(B)(1) claim on behalf of Pride, this claim is not property of the estate.

Because under applicable state law the Debtor could not have raised Pride's § 37:91(B)(1) claim as of the commencement of the case, the analysis can stop here. But even so, harm caused by any deficiencies in the 2014 Pride Audit constitute a direct injury to Pride that is not derivative of injury to the Debtor. Neither the Debtor nor any other creditor was injured by the deficiencies in the 2014 Pride Audit. Mindful that the injurious conduct at issue with respect to Pride's § 37:91(B)(1) claim is the deficiencies in the 2014 Pride Audit, that injury was inflicted directly on Pride—it is therefore not derivative of whatever other injury might have been inflicted on the Debtor with respect to its own audits. The injury that Pride complains about is direct and personal to Pride. Because the Debtor has no standing to assert Pride's § 37:91(B)(1) claim based on the 2014 Pride Audit, and because Pride alleges direct and personal harm from the 2014 Pride Audit that is not derivative of injury to the Debtor or generalized as to all of the creditors, Pride's § 37:91(B)(1) claims are not property of FSW's bankruptcy estate and are therefore not affected by the automatic stay. And the question whether Pride, in the absence of any discovery, has alleged sufficient facts to causally link specific elements of damages to the injuries inflicted on Pride by LaPorte via the 2014 Pride Audit, simply does not enter the analysis.

The Trustee's position is that all of Pride's claims against LaPorte are actually tied to the 2014 FSW Audit, and to the extent that Pride has tried to claim that they are based on the 2014 Pride Audit, the claims constitute "disguised" 2014 FSW Audit claims and

---

[9] Similarly, FSW and only FSW owns and has standing to assert claims against LaPorte under La. R.S. § 37:91(B)(1) for injury resulting from the 2014 FSW Audit and the 2013 FSW Audit. Neither Pride nor any other party can bring those claims against LaPorte.

according to the Trustee the bankruptcy court erred by failing to call them out as such.[10]

Assuming then that all of Pride's claims against LaPorte are really "disguised" 2014 FSW Audit claims, the Trustee argues that La. R.S. § 37:91 creates a <u>single</u> cause of action for negligent accounting work assertible by two different persons (as delineated by §§ 37:91(B)(1) and (2)) who each have a right of action (in other words, who each have standing in the alternative to pursue the claim). The Trustee's theory of the case concludes then with the contention that because he has standing to assert claims based on the 2014 FSW Audit, and because the injuries that Pride sustained are merely derivative of injury to FSW, Pride's own standing with respect to the 2014 FSW Audit must give way to the Trustee's exclusive standing to assert claims against LaPorte, those claims being property of the estate.

The Court is persuaded that the question whether Pride's §37:91(B)(1) claims are actually "disguised" 2014 FSW Audit claims is a red herring and a moot one because the Trustee's single cause of action/dual standing argument is contradicted by the express terms of La. R.S. § 37:91. That statute in no way suggests that there exists a single cause of action against LaPorte in conjunction with the 2014 FSW Audit. Rather, the statute unambiguously grants the party with contractual privity (in this case the debtor, FSW) a cause of action for its injuries under § 37:91(B)(1). And for parties without contractual privity who relied on the audit to their detriment, § 37:91(B)(2) of the statute delineates how those parties (parties like Pride) establish privity in order to assert a reliance claim. Obviously, the statute was written with the very plausible recognition that a party can sustain injury from deficient accounting work even in the absence of contractual privity. The legislature in

---

[10] The bankruptcy court was persuaded that Pride's claims in conjunction with Saturn, rebates, and vendor guarantees were grounded validly on reliance on the 2014 Pride Audit and therefore were not property of the estate.

enacting La. R.S. § 37:91 chose not to deny a cause of action to the injured party without contractual privity. The statute clearly envisions a cause of action owned by the party with contractual privity (§ 37:91(B)(1)) and a cause of action owned by parties without contractual privity who can satisfy the standing criteria of § 37:91(B)(2).[11] Those two classes of injured parties do not have standing to assert each other's claims simply because they arise out of the same deficient accounting work. Thus, because the Debtor lacks standing to assert another party's reliance claims under § 37:91(B)(2), including Pride's reliance claims, those claims cannot be property of the estate affected by the automatic stay.

Even though the Court need not address the Trustee's contention that Pride's cause of action for reliance on the 2014 FSW Audit alleges only injury derivative of the Debtor's injury, the Court finds the Trustee's argument to the contrary to be unconvincing. Again, as with the 2014 Pride Audit, the 2014 FSW Audit directly injured Pride because it contained numerous deficiencies, and Pride relied upon the audit when making financial decisions with respect to FSW. Meanwhile, it is axiomatic that all creditors of the bankrupt suffer damage when the debtor becomes insolvent, and when the debtor corporation itself sustains injury at the hands of a third party. This constitutes general harm to the creditors and it necessarily follows when the debtor has been injured. *Educ. Grp. Health Trust*, 25 F.3d at 1285. Therefore, because FSW was injured by the 2014 FSW Audit, Pride along with all the other creditors in FSW's bankruptcy derivatively sustained injury as a result of the deficiencies in the 2014 FSW audit. Only the Trustee will have standing to assert FSW's §37:91(B)(1) claims against LaPorte; injury that FSW sustained from its deficient audits that did not directly injure any creditor including Pride.

---

[11] In fact, nothing prevents multiple and numerous parties from owning a reliance claim under § 37:91(B)(2).

But again, any injury that Pride alleges pursuant to §37:91(B)(2) in conjunction with its reliance on the 2014 FSW Audit is a direct injury to Pride. At this juncture it might very well be difficult to create a bright line distinction between the damages attributable to Pride's direct injury and those damages attributable to generalized injury to FSW. But this difficulty, and the fact that the Debtor and Pride might have both been damaged by the audit in similar ways does not render Pride's injury from relying on the audit any less direct. *Buccaneer Res.*, 912 F.3d at 293 (recognizing that the creditor and the debtor may have separate claims against a third party arising out of the same events); *Seven Seas Petrol.*, 522 F.3d at 585. The key factor in vetting claims for which a creditor is able to pursue a third party is identifying the nature of the direct injury to the creditor that is independent of injury to the debtor. Pride's own reliance on the allegedly deficient 2014 FSW Audit constitutes direct injury to Pride that is independent of any injuries inflicted on the Debtor. Contrary to the Trustee's suggestion, the issue is not the nature of the damages claimed but rather the nature of the injury inflicted.[12] And the Trustee's protestations to the contrary, Pride is not seeking to recover for a generalized injury based on the depletion of the estate's assets; generalized injury that is present in every liquidation case.[13]

Based on the foregoing, the bankruptcy court committed no error in concluding that the Pride Direct Claims and the reliance claim related to the Iberia Bank guaranty were not

---

[12] The Trustee has devoted a significant amount of argument to his contention that Pride's damages with respect to the Iberia Bank guaranty were derivative of injury to the Debtor because a guaranty is an accessory obligation to an underlying indebtedness. While it is certainly true that Pride was only called upon to fulfil the guaranty after FSW became insolvent, it remains that the decision to increase the guaranty, which was a separate obligation from FSW's commitment under the line of credit, is alleged to be based on deficiencies in both the 2014 Pride Audit and the 2014 FSW Audit, in other words direct injuries to Pride.

[13] To be sure, Pride's claims may ultimately prove to be such if Pride cannot carry its burden as to causation on its §37:91 claims against LaPorte. That, however, is a merits question that does not factor into the analysis.

property of the estate subject to the automatic stay. The Court is likewise persuaded, however, that the bankruptcy court erred in holding that any part of Pride's claimed damages or claims were subject to the automatic stay.

The bankruptcy court was persuaded that Pride's CPA Complaint failed to articulate facts to show how the 2014 FSW Audit created a unique loss to Pride that was not sustained by any other creditor. The bankruptcy court was also persuaded that Pride had failed to articulate sufficient facts to state a §37:91(B)(2) reliance claim except with respect to the Iberia Bank guaranty. As to certain other elements of damages (loans, payroll, licensing, marketing and operating costs), the bankruptcy court was persuaded that Pride had failed to articulate facts sufficient to tie those elements of damages to any of the LaPorte audits.

The automatic stay provided by 11 U.S.C. § 362(a)(3) only applies to claims that are property of the estate. Neither Pride's §37:91(B)(1) claims nor its §37:91(B)(2) claims are property of the estate because the Debtor lacks standing to assert them. When determining whether a claim is property of the estate, the controlling law in this circuit does not concern itself with whether the creditor can ultimately prove a causal relationship between a specific element of monetary damage and the direct harm that gives the creditor standing that others do not have.[14] And even less, at the pleading stage, it does not require the creditor to plead sufficient facts to state a cause of action or to demonstrate plausibility.[15] To the

---

[14] Even if every creditor in FSW's bankruptcy had been directly injured by reliance on the 2014 FSW Audit, it would not render the claim property of the estate. The claim would still belong to the creditors personally and the Trustee would lack standing to assert it for them. *See Educ. Grp. Health Trust*, 25 F.3d at 1285 n.4 (noting that a cause of action does not belong to the estate simply because it could be brought by many creditors instead of only one). Thus, it was error to penalize Pride for failing to show at this juncture that the 2014 FSW Audit created a unique loss to Pride that was not sustained by any other creditor. This is not the correct legal analysis.

[15] Of course, even assuming that the jurisprudence would recognize an exception for a wholly

contrary, the controlling jurisprudence warns that merits questions including sufficiency in

pleading play no part in determining whether claims belong to the bankruptcy estate. *Seven*

*Seas Petrol.*, 522 F.3d at 585, 586. This makes sense of course because one party's failure

to properly allege a claim does not transform it into property of the estate.[16]

The Trustee devoted a significant amount of briefing to the contention that Pride

simply fails to state a cause of action under either section of La. R.S. § 37:91 but that issue

is simply not pertinent to the analysis. Moreover, in every bankruptcy a creditor in Pride's

position will be motivated to try to "shoehorn" as many losses as possible into its direct

injury claim yet the Fifth Circuit still instructs that the jurisdictional analysis is narrow and

does not touch upon the merits including the sufficiency of the allegations. It was error to

prejudge Pride's claims against LaPorte.

In short, Pride has identified direct injury or harm vis à vis LaPorte in conjunction

with the 2014 Pride Audit and the 2014 FSW Audit. State law unambiguously provides a

cause of action to Pride in conjunction with the injury or harm that Pride claims to have

suffered as a result of the deficiencies in those audits. This *injury* is direct and personal to

Pride and it remains to be seen what elements of damages that Pride can ultimately prove

causation with respect to. Whether Pride's CPA Panel Complaint passes muster under the

federal rules of pleading or whether Pride was able to articulate before the bankruptcy court

---

frivolous claim, Pride's claims against LaPorte are not facially frivolous and do not suffer from a lack
of plausibility. FSW and Pride were related companies run by many of the same officers. It hardly
strains credulity to suggest that Pride would have relied on the 2014 FSW Audit and that LaPorte
would have understood when it prepared the audit that Pride would do so. Whether Pride can
ultimately prove its claims is a question for another tribunal.

[16] Moreover, Pride's counsel repeatedly brought to the bankruptcy court's attention during the
hearing that Pride had been given no opportunity to conduct discovery and was still in the process of
evaluating its claims under state law.

a sufficient causal nexus between its damages and either audit is beyond the scope of the legal analysis, the goal of which is to identify property of the estate.

The final question is whether the bankruptcy court erred in refusing to enjoin Pride's CPA Panel Complaint pursuant to 11 U.S.C. § 105(a). The bankruptcy court was persuaded that it lacked subject matter jurisdiction and statutory authority to stay the claims pursuant to 11 U.S.C. § 105(a).

Beyond the automatic stay provisions of § 362(a), the bankruptcy court may affirmatively stay proceedings pursuant to its broad discretionary powers embodied in 11 U.S.C. § 105. *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 n.3 (5th Cir. 1987). Pursuant to § 105, the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of Title 11. 11 U.S.C. § 105(a). Section 105 does empower the bankruptcy court to stay proceedings against non-bankrupt entities. *S.I. Acquisition*, 817 F.2d at 1146 n.3. The decision to stay a proceeding pursuant to § 105 is within the court's discretion and requires "the balancing of relevant interests." *Id.* (quoting *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983)).

In order for the bankruptcy court to exercise its § 105 power it must first have subject matter jurisdiction over the dispute to be enjoined. *See Zale Corp.*, 62 F.3d at 751. Title 28 U.S.C. § 1334(b) gives the court original jurisdiction over civil proceedings "related to" cases under Title 11. Therefore, in order to determine whether jurisdiction exists, it is necessary only to determine whether a matter is at least "related to" the bankruptcy. *Zale*, 62 F.3d at 752 (citing *In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995)). Shared facts between a third party action and a debtor-creditor do not in and of themselves suffice to make a third party action "related to" the bankruptcy. *Id.* at 753.

Importantly, § 1334(b)'s "related to" jurisdiction serves to force into the bankruptcy lawsuits to which the debtor need not be a party *but which may affect the amount of property in the bankruptcy estate. Zale,* 62 F.3d at 752. If the outcome of a proceeding could conceivably have *any effect* on the estate being administered in bankruptcy, then "related to" jurisdiction will generally exist. *Id.* It is the relation of the dispute to the estate and not of a party to the estate that establishes jurisdiction. *Id.* at 755 (quoting *Elscint, Inc. v. First Wis. Fin. Corp.*, 813 F.2d 127, 131 (7th Cir. 1987)).

The bankruptcy court was persuaded that "related to" jurisdiction does not extend to Pride's claims against LaPorte because the claims at issue are neither against the Debtor nor its property. After all, the LaPorte policies are not property of the estate. The Court notes, however, that Pride's claims against LaPorte, even though they do not involve the Debtor or its property, could conceivably affect the bankruptcy estate because the total of LaPorte's errors and omissions policies is insufficient to cover the damages claimed by either the Trustee (on behalf of FSW's estate) or Pride. The Trustee points out that the policies are "wasting" policies and aside from insurance LaPorte's net liquidation value would be insufficient to cover all claims. As such, funds available to the estate for its recovery against LaPorte will surely be diminished if Pride is allowed to proceed in competition with the Trustee. In *Zale*, the Fifth Circuit was persuaded that litigation against a third party that would have the effect of tying up and diminishing policy assets that would otherwise inure to the benefit of the estate sufficiently affected the estate so as to create "related to" jurisdiction. 62 F.3d at 759. But in so holding the Fifth Circuit specifically pointed out that *Zale* was a reorganization case (not a liquidation case) and that bankruptcy court jurisdiction extends more broadly in a reorganization case. *Id.* at 759 n.38 (citing *Celotex Corp. v. Edwards*, 115 S. Ct. 1493, 1500 (1995) (comparing Chapter 11 and Chapter 7

bankruptcy cases). The court specifically declined to suggest whether the same result would attach in a liquidation case. *Id.*

Even assuming that the bankruptcy court would have had subject matter jurisdiction over Pride's claims against LaPorte, this Court is persuaded that the bankruptcy court did not err in refusing to temporarily enjoin Pride's claims so that the Trustee could pursue its claims against LaPorte without competition from Pride. A temporary injunction of the kind that the Trustee seeks may be proper under "unusual circumstances." *Zale*, 62 F.3d at 761 (citing *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993)). Such unusual circumstances include when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor, and when the third party action will have an adverse impact on the debtor's ability to accomplish reorganization. Absent a finding that such unusual circumstances exist, the court may not enter an injunction of the third party action. *Id.* (citing *In re Am. Hardwoods, Inc.*, 885 F.2d 621, 626-27 (9th Cir. 1989)).

Although the bankruptcy court did not expressly reach the issue of whether unusual circumstances exist to justify a temporary injunction of Pride's claims under § 105(a), the bankruptcy court nonetheless identified the aspects of this case that militate against a finding of unusual circumstances. Because this is a liquidation case and not a Chapter 11 reorganization case, Pride's pursuit of its own claims against LaPorte does not threaten to interfere with the administration of the case. The assets available to satisfy both Pride's and the Debtor's claims (the LaPorte's insurance policies and LaPorte's patrimony) are not the Debtor's property, and a large portion of Pride's claims have no relationship to FSW.

The bankruptcy court was also unmoved by the Trustee's argument that Pride and the estate would be competing for the same limited pool of funds. The bankruptcy court

specifically found this situation insufficient justification to enjoin Pride's claims, even if temporarily. The bankruptcy court was not persuaded that such an injunction should issue in the absence of an extraordinary showing of damage to the estate. That showing was simply not present in this case.

This Court agrees. Section 105(a) allows for an order, in this case a temporary injunction, *if it is necessary or appropriate to carry out the provisions of Title 11*. The Trustee's confessed purpose in enjoining Pride's claims is to clear the field of competition from any other claimants when pursuing FSW's claims against LaPorte so that the Trustee can obtain the entirety of the available insurance proceeds without interference from Pride. This way all of the creditors, including Pride, can share in the benefits of the Trustee's efforts. To be sure, equality of distribution among creditors is an important general policy of bankruptcy law, *see MortgageAmerica*, 714 F.2d at 1274; *S.I. Acquisition*, 817 F.2d at 1153, but Pride is not similarly-situated to the other creditors who do not possess a personal cause of action against LaPorte for direct injury. No principle of bankruptcy law suggests that Pride should be impoverished on its direct claims so that other creditors will be better off. The bankruptcy court did not err in declining to exercise its discretion to enjoin Pride's CPA Panel Complaint pursuant to § 105(a).

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the judgment of the bankruptcy court is affirmed in part and reversed in part. The judgment is reversed to the extent that the bankruptcy court concluded that any of Pride's claims against LaPorte are property of the bankruptcy estate and therefore subject to the automatic stay. The judgment is affirmed in all other respects.

April 26, 2019

_____

UNITED STATES DISTRICT JUDGE